McDONALD CARANO LLP
Ryan J. Works, Esq. (NSBN 9224)
John A. Fortin, Esq. (NSBN 15221)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

HOLLAND & KNIGHT
Anjuli B. Woods, Esq. (NSBN 10989)
1801 California Street, Suite 5000
Denver, CO  80202
Telephone: (303) 974-6660
anjuli.woods@hklaw.com

Andrew Cummings, Esq. (NSBN 14505)
3 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: (949) 833-8550
andrew.cummings@hklaw.com

*Attorneys for Single Helix Investment
Technology, LLC., Collins Capital LLC,
Susan Kaplan, Stephen Geller, and
Martin Fabrikant*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 23-11160-abl |
| | Chapter 11 |
| BANDAR ENTERPRISES, LLC, | |
| Debtor. | **MOTION FOR ABSTENTION AND DISMISSAL OF DEBTOR'S CHAPTER 11 BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 305(a)(1) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 1017(d)** |
| | **Hearing Date: TBD**<br>**Hearing Time: TBD** |

Single Helix Investment Technology, LLC., Collins Capital LLC, Susan Kaplan, Stephen Geller, and Martin Fabrikant ("Creditors") in the above captioned Case, move this Court for and order of abstention and dismissal of Debtor's Chapter 11 Bankruptcy Case Pursuant to 11 U.S.C. § 305(a)(1) and Federal Rule of Bankruptcy Procedure 1017 (the "Motion").  This Motion is made and based on the following Memorandum of Points and Authorities, the Declaration of Ryan J. Works, Esq. filed concurrently herewith ("Works Decl."), the papers and pleadings attached, and on

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966
McDONALD CARANO

1

file herein, and the arguments of counsel to be made at the hearing on this matter.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    JURISDICTION

1.    The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Court.

3.    Venue is proper in the District of Nevada pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The Motion is based on 11 U.S.C. § 305(a)(1) and Federal Rule of Bankruptcy Procedure 1017(d).

5.    Under the Local Rules of Bankruptcy Practice, for the United States Bankruptcy Court, District of Nevada ("LR"), this is a "contested matter" (LR 9014) and Creditors consent to entry of "final orders or judgment by the bankruptcy judge." *See* LR 9014.2.

### II.    INTRODUCTION

Heath Wills, the manager and member of Bandar Enterprises, LLC (the "Debtor") commenced this Chapter 11 Case to avoid sanctions imposed by the Nevada Court, to evade the Receiver's on-going investigation of gross misconduct and fraud by Heath Wills and Patricia Wills (collectively, "H&P Wills") and to frustrate Creditors' recovery of assets the Nevada State District Court (the "Nevada Court") found were fraudulently transferred to the Debtor and to other entities owned or controlled by H&P Wills.[1]  The interests of creditors and the Debtor are better served by abstention and dismissal of this Bankruptcy Case pursuant to 11 U.S.C § 305(a)(1).

For three years, the Nevada Court entered numerous substantive orders against the Debtor, H&P Wills, and other defendants.  *See* Works Decl. ¶ 17, *see also* **Exhibit 12** (detailing years of discovery abuses as the Nevada Court entered case dispositive sanctions).  On May 5, 2022, the Nevada Court appointed William M. Holland as Receiver ("Receiver") with extensive powers

---

[1] On April 27, 2020, the Creditors initiated a lawsuit in the Clark County, Nevada, District Court (the "Nevada Court") as case no. A-20-814263-B against Defendants Assurity Healthcare, Inc., Assurity Labs, Inc., Heath Wills, his wife Patricia Wills, James Sheldon, and Bandar Enterprises, LLC dba Cuur Diagnostics.  A true and correct copy of the initial Complaint is attached to the Works Decl. as Exhibit 1. (Works Decl. ¶ 4, **Exhibit 1**.)

McDONALD ⟐ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

extending to "all of the real and personal, tangible and intangible property of Defendants Assurity Healthcare, Inc., Assurity Labs, Inc., Bandar Enterprises, LLC, and any other entity owned or controlled by either Defendant Heath Wills and/or Defendant Patricia Wills." *See* Works Decl. ¶ 9 at **Exhibit 4** ("Receiver Order.").

Pursuant to the Receiver's wide-ranging authority before the Petition Date, he managed the Debtor's finances, paid creditor claims, controlled the Debtor's operations, conducted discovery, and sought to recover assets fraudulently transferred to the Debtor and other entities controlled by H&P Wills.  Dismissal of this Bankruptcy Case prevents needless delay, duplication and confusion about the Receiver's ability to operate the Debtor, to investigate H&P Wills' wrongful acts and to recover assets fraudulently transferred to themselves (such as payment for several cars and multiple home mortgages) and to entities they own or control.

Dismissal of this Bankruptcy Case also avoids duplicative and wasteful administration by this Court, which has limited resources, and re-litigation of actions nearly concluded by the Nevada Court which, over three years, issued substantive orders establishing the liability of H&P Wills, and other Wills Defendants, for fraudulently transferring assets and other wrongful acts.[2]

For example, on August 19, 2022 the Nevada Court granted the Plaintiff's Motion to create a Constructive Trust against the Debtor and others based on findings of intentionally wrongful acts and the fraudulent transfer of assets:

> [T]he Defendants took the Plaintiffs' capital investments in excess of $900,000, then blinded the Plaintiffs to the business operations and financials, then usurped their control and authority within [Attom Genetics, LLC doing business as Xymbio, the "Company"], then simply took everything the Company owned (licensing, equipment, employees, clients/customers, and intellectual property) and commenced using those assets to create significant profits in [the Debtor] created and owned solely by Defendants Heath and Patricia Wills.

(Works Decl. ¶ 16, **Exhibit 11**).  Heath Wills continues to transfer Debtor's assets – in April 2023, Heath Wills admitted to the Nevada Court that he was in "error" when transferred (or leased) Debtor equipment to a third party without the Receiver's prior approval (which was not obtained).

_____

[2] The Plaintiffs in the Nevada Action are the Creditors seeking dismissal and the Defendants in the Nevada Action are referred to as the ("Wills Defendants.")

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

On November 30, 2022, the Nevada Court granted Plaintiffs' Motion For Case Dispositive Sanctions. *See* Works Decl. ¶ 17, *see* **Exhibit 12** ("Dispositive Sanctions Order"). This decision is based on the Wills Defendants' (including Debtor's) obstruction and non-compliance with discovery and Nevada Court Orders over several years. *See id*. Among other sanctions, the Dispositive Sanctions Order entered judgment against the Wills Defendants (including Debtor's) on the issue of liability for fraudulent transfer of Attom assets. *See id*. All that remains for entry of a final judgment is a prove-up hearing on damages. *See id*. The Receiver should continue to manage the Debtor's operation and to identify and recover Debtor's assets H&P Wills used to pay personal expenses (for cars, homes, and a boat) and which H & P Wills attempted to place beyond the reach of creditors.

Creditors ask this Court to dismiss the Debtor's Bankruptcy Case pursuant to 11 U.S.C § 305(a)(1) to avoid delay, duplication and confusion and allow the Receiver to recover assets fraudulently transferred and used to pay personal expenses of H&P Wills.

## III.    FACTUAL BACKGROUND

### A.    Formation, Management and Operation of Attom

On or about May 23, 2019, the Creditors and H&P Wills formed Attom Genetics, LLC ("Attom") with Creditors contributing $900,000 and H&P Wills contributing $101 as initial capital for Attom. (*See* Works Decl. ¶ 16, *see* **Exhibit 11**, ¶¶ 3, 7.) While no Operating Agreement was executed, Shari Taub and Heath Wills were designated to manage Attom's business, marketing, and finances. (*Id.* at ¶ 9). Heath Wills, a medical doctor, was designated to manage the medical research and production of Attom, which operated labs in Las Vegas, Nevada and San Diego, California. (*Id.* at ¶ 15.)

Attom was a molecular infectious disease testing company, which owned state-licensed clinical medical laboratories specializing in high complexity molecular infections disease testing performed at laboratories located in Las Vegas, and San Diego with its corporate offices in Las Vegas. (Works Decl. ¶ 5, Ex. 2 (the "Third Amended Complaint") ¶ 2.) Initially, Attom developed molecular infectious disease testing panels for a variety of purposes including: respiratory, wound & skin, nail fungus, eye, ear, nose, throat & sinus, orthopedic joint puncture aspiration, and antibiotic sensitivity. (*Id.* at ¶ 3.) When testing for the Covid-19 virus became a national priority, Attom

4

developed high complexity, FDA-approved PCR Covid-19 tests. (*Id.* at ¶ 3.)

**B.    Creditors' Nevada Court Action**

Starting in January 2020, without Creditors' knowledge and without consideration to Attom, H&P Wills transferred the Creditor's capital contributions, Attom's intellectual property, employees, and assets to the Debtor, an entity owned solely by H&P Wills. (See Works Decl. ¶ 16 see Exhibit 11, ¶¶ 28-34.)  Beginning in April 2020, at the direction of H&P Wills, the Debtor opened at least 3 separate testing labs and began to conduct hundreds of thousands of Covid-19 tests and perform other lab tests but failed to distribute any profits to Attom or to the Creditors.  (See Works Decl. ¶ 4, see Exhibit 1 ¶¶ 11-13, 39(a)-(w), 171-72.)

On April 27, 2020, soon after learning of the fraudulent transfer of assets to Debtor, the Creditors filed an action in the Nevada Court (the "Nevada Court Action") against Assurity Healthcare, Inc., Assurity Labs, Inc.3, Heath Wills, Patricia Wills, James Sheldon4, and Bandar Enterprises, LLC d/b/a Cuur Diagnostics (collectively, "Wills Defendants") alleging, among other things, fraudulent transfer of substantially all of Attom's assets to the Debtor.  The Creditors' complaint also named Attom d/b/a Xymbio and Xymbio, LLC as nominal defendants.  On May 11, 2020, Creditors filed the Third Amended Complaint which is referenced in the various court orders discussed herein.  (See Works Decl. ¶ 4, Exhibit 1.)

**C.    The Initial Sanctions and Injunction Orders.**

On September 29, 2021, the Nevada Court granted Creditors' Motion for Discovery Sanctions based on the repeated failure of H&P Wills and other Wills Defendants to respond to Creditors' discovery requests. (Works Decl.¶ 5,  Exhibit 2 (the "Initial Sanctions Order")).  Among other sanctions, the Nevada Court ordered the Wills Defendants (including Debtor) pay $70,000 to Creditors within 30 days of the hearing.  (See id. at 9.)  The Wills Defendants failed to pay Creditors as directed by the Nevada Court and, after several hearings to enforce the Sanctions Order, H&P

---

[3] Assurity Healthcare, Inc. and Assurity Healthcare Labs are d/b/as of Debtor and not separate entities. *See* ECF. No. 1.

[4] James Sheldon never appeared in the Nevada Court Action.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Wills made a $10,000 payment to Creditors on or about March 20, 2022.  (See Works Decl. ¶ 6.)

Unpaid is $60,000 due to Creditors under the Initial Sanctions Order. (Id.)

During the pendency of the Nevada Court Action, H&P Wills continued to operate the Debtor using fraudulently transferred assets and employees yet none of the significant profits allegedly generated by Debtor were paid to Attom or to Creditors.  Based on H & P Wills' continuing disregard for Nevada Court orders and their failure to comply with discovery requests, the Creditors sought a preliminary injunction against H&P Wills and the Wills Defendants.

On April 26, 2022, the Nevada Court entered an injunction order ("Injunction Order") prohibiting and enjoining H&P Wills, the Debtor and other Defendants from:

> a.  Committing or permitting any waste of the ENTITIES[5]  or any part thereof, or suffering or committing or permitting any act that would constitute a violation of law, or removing, transferring, encumbering or otherwise disposing of any asset of the ENTITIES;
>
> b.  Directly or indirectly interfering with or delaying in any manner the discharge of obligations under this Order;
>
> c.  Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in, encumbering, concealing or in any manner whatsoever dealing in or disposing of the whole or any part of the ENTITIES, without the approval of this Court; and
>
> d.  Doing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the ENTITIES and their assets or the intent of this Order.

(Works Decl. ¶ 7, **Exhibit 3** ¶ 8).  H&P Wills, the Debtor and the other Wills Defendants ignored the Injunction Order which required Creditors to request the Nevada Court to appoint a receiver.

**D.    Appointment of Receiver For H&P Wills Defendants**

On May 5, 2022, the Nevada Court appointed William M. Holland (the "Receiver"), a Certified Fraud Examiner[6] as Receiver to oversee Debtor's management, finances, and operations together with "any other entity owned or controlled by [H&P Wills]."  (Works Decl. ¶ 11, **Exhibit**

---

[5] As defined in the Nevada Court's Injunction Order, the "Entities" are H&P Wills, the Debtor and all entities named in the Third Amended Complaint.

[6] A summary of Mr. Holland's extensive background and experience is attached to the Works Decl. ¶ 12, **Exhibit 7**.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**4** (the "<u>Receiver Order</u>")).  The Receiver Order is exceptionally broad and included but is not limited to:

> [E]ntry, possession, control, management, protection, and disposition of the personal property and/or records, of any type, that are or may be related to this action, along with all of the real and personal, tangible and intangible property of Defendants ASSURITY HEALTHCARE, INC., ASSURITY LABS, INC., BANDAR ENTERPRISES, LLC, and any other entity owned or controlled by either Defendant HEATH WILLS and/or Defendant PATRICIA WILLS, including but not limited to all buildings, improvements, fixtures, goods, equipment, documents, books, records, papers, and accounts (collectively, the "<u>Receivership Estate</u>").

(*Id*. at 2:9-16.)  The Receiver Order sharply limits the powers of H&P Wills and provides the Receiver with exceptionally broad authority:

> 4.  The Receiver shall allow the managing member of any entity subject to the Receivership Estate to manage the operations side of the ongoing businesses so long as such operational decisions do not delay, obstruct, or otherwise interfere with the Receiver or his duties. In contrast, all financial decision-making shall be under the direct control of the Receiver. Regardless, and without limitation, the Receiver may direct employees of any entity within the Receivership Estate to assist him in duties, and such direction shall have priority over any direction given by the managing members. Further, the Receiver shall have the authority to hire and/or terminate employees.
>
> . . .
>
> 8.  The Receiver shall demand, collect, and receive any and all property or records relating to the Receivership Estate in possession of Defendants, their agents, servants, employees or representatives, and all persons or entities acting under or in concert with them, or that are now due and hereafter due from any the clients of the Receivership Estate ("<u>Proceeds</u>").
>
> 9.  The Receiver shall take possession of and receive access to and from any and all banks, savings and loan associations and/or any financial institutions as a signatory for any monies and funds on deposit in said banks, savings and loan associations and/or any financial institutions in the name of any and all entities within the Receivership Estate, and the Receiver's receipt of access to said monies and funds shall discharge said banks, savings and loan associations and/or any financial institutions from further responsibility for accounting to said account holder for monies and funds for which the Receiver shall give his or its receipt or draft.

(*Id*.)  H&P Wills and the Wills Defendants (including the Debtor) refused to cooperate or to provide requested information and documents to the Receiver.

**E.      The Receiver's First and Second Reports.**

After visiting Debtor's facilities, the Receiver immediately determined that he needed to take an active role in the Debtor's operations by managing its collections and payroll, examining accounts

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

payable, and determining the correlation between profitability and cash flow. (Works Decl. ¶ 13, **Exhibit 8** (the "First Report of Receiver") at 9.) However, H&P Wills delayed providing information and business records as requested by the Receiver. (Works Decl. ¶ 14, **Exhibit 9** (the "Second Report of Receiver")). When the Receiver finally obtained control of Debtor's accounts, he "discovered that most, if not all, [of H&P Wills'] personal bills, were being paid by the company, and not directly by Heath or Patricia Wills." (*Id.* at 3.) The Receiver also found that "tax returns, business reports, and other necessary document, that the receiver needed, were almost non-existent." (*Id.* at 3-4.)

The Second Report of Receiver included a forensic analysis for the period of January 2022 through May 2022 which showed the Debtor had a negative net income of $171,306.02.[7] (*Id.* at 8.) The Receiver also determined that during the same time, $222,508.72 was transferred to Heath Wills PC (a professional services entity controlled by Heath Wills) and $231,049.32 was transferred to H&P Wills' personal account. The Receiver commented that "the business accounts were basically used by Heath & Patricia Wills as their personal bank accounts. . . ." (*Id.*)

Eventually, the Receiver obtained a preliminary accounts payable report for vendors and began making payments to Debtor's creditors. (*Id.*) The Receiver concluded that the Debtor "falls short of a well-structured business" but continued to operate their three labs with "great results," generating income in the $5 million to $5.5 million range. (*Id.* at 9.) But, poor management by H&P Wills and an on-going lack of communication hindered both the Receiver's efforts and the Debtor's business operations. (*Id.*)

**F.    Imposition of Constructive Trust and Entry of Case Dispositive Order**

H&P Wills and the other Wills Defendants continued to ignore Creditors' discovery requests and refused to comply with Nevada Court orders. On August 19, 2022, the Nevada Court granted the Creditors' Motion for Constructive Trust, finding that the Wills Defendants "took the Plaintiffs' capital investments in excess of $900,000," "blinded the Plaintiffs to the business operations and

---

[7] A three-year profit and loss comparison was compiled by the Receiver. (*See* Works Decl. ¶ 12, **Exhibit 7**; Exhibit A.)

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

financials," "usurped their control and authority within the company," and "commenced using those assets to create significant profits in a substitute entity created and owned solely by Defendants Heath and Patricia Wills." (Works Decl. ¶ 16, **Exhibit 11** at 2.)

Based on such findings, the Nevada Court ordered the Wills Defendants to fund a Constructive Trust with net revenues over 50% "for all Defendant entities…" (*Id.* at 9.) The Constructive Trust account was never funded and the Wills Defendants continued to ignore the Nevada Court's orders and discovery propounded by Creditors.

On November 30, 2022, the patience of the Nevada Court ended and, after an extensive 7-page review of the egregious conduct by H&P Wills and the other Wills Defendants, the Nevada Court granted the Creditors' Motion for Case Dispositive sanctions, stating:

> Because the frustration of the adversarial process is clearly embedded in the record of this action, with literally years of status hearings, Motions, and Orders on this issue alone, there are no genuine and material issues of fact present because the failure to respond to discovery is uncontroverted, and no evidentiary hearing is required.

> Thus, the Court finds that Defendants willfully refused to participate in the adversarial process, and such conduct prejudiced Plaintiffs. To issue additional lessor sanctions at this stage of the litigation would only further prejudice Plaintiffs because Defendants have refused to participate in discovery for close to a two-year period of time, and Defendants have already ignored the Court's prior orders requiring them to participate in discovery, and prior escalating sanctions did not alter that misconduct.

(Works Decl. ¶ 17, **Exhibit 12** ¶¶ 6, 7.) The Nevada Court found that the Wills Defendants were in a state of "procedural default," and thus struck all of the Wills Defendants' pleadings and entered "a finding of liability on all claims stated in the operative Third Amended Complaint." (*Id.*) The Nevada Court further ordered "that these proceedings shall move forward to determine damages only with the allegations of the Third Amended Complaint being taken as true." (*Id.*)

During the past four months, the Creditors sought to determine the amount of damages they are entitled to receive in a final judgment. However, in continuing violation of Nevada Court orders, H&P Wills and the Wills Defendants refuse to cooperate in producing documents, testimony and other information needed to establish the amount of Creditors' damages.

In its Emergency Motion Authorizing Use of Cash Collateral ("Cash Collateral Motion") Debtor appears to suggest that the in the March 27, 2023 Nevada Court Order, the Nevada Court

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

9

reconsidered the liability of H&P Wills and the Wills Defendants (including Debtor) to the Creditors. [ECF No. 30.]  Any such suggestion is erroneous and the only issue that remains in the Nevada Action is to determine the amount of damages due to Creditors.  As discussed below, one purpose of the Debtor's Bankruptcy filing is to hinder Creditor's discovery so as to delay entry of a final judgment against Health Wills, Patricia Wills, and Heath Wills, PC.

      **G.**    **On-Going Management By And Recommendations Of The Receiver**

Despite obstructions created by H&P Wills, the Receiver continued to manage the Debtor's operations and finances, identify unpaid invoices, pay creditors, and keep the Debtor running. Submitted on September 30, 2022, the Receiver's Third Report states that he was "working to establish good business practices, setting up accounting records, creating payment schedules and building business communications between the different departments and their vendors." (Works Decl. ¶ 15, **Exhibit 10** (the "Third Report of Receiver" at 2)).  The Third Report of Receiver described a number of pending lawsuits and claims against the Debtor and the Receiver's (and his counsel's) success in resolving such disputes. (*Id.*)

For example, the Receiver and his counsel negotiated an arrangement with the Debtor's secured lender, Wells Fargo, to make monthly payments so as to stave off the Wells Fargo lawsuit. (*Id.*)  The Third Report of Receiver also listed 8 collections actions and indicated that the Receiver was working to pay off those collections or reach compromises to settle those debts.  (*Id.*)  The Receiver stated that he was paying old accounts and invoices despite the Debtor's "distorted" financial condition.  (*Id*. at 5; Works Decl. ¶ 16, **Exhibit 11** (the "Fourth Report of Receiver") at 2). The Receiver recommended selling assets that did not benefit the Debtor, closing one of the labs and transferring the equipment to the other labs, and continuing to work to increase efficiency and billings while controlling expenses.  (*Id*. at 7)

On December 29, 2022, the Receiver detailed on-going issues with cash flow and the efforts the Receiver was undertaking to keep the labs operational. (Works Decl. ¶ 17, **Exhibit 12** (the "Fifth Report of Receiver") at 3).  The Receiver determined "the time is now upon us to eliminate 'any and all' non-essential assets to reduce the company's overhead."  (*Id.*)  The Receiver recommended reducing the monthly salaries of H&P Wills from $75,000 each per month to $50,000 each per

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

month.  (*Id.*)  He also recommended shutting down the Fort Apache laboratory and moving the equipment and staff to the Spanish Ridge Las Vegas location.  (*Id.*)

**H.    Debtor's Payment of H&P Wills' Personal Expenses And Potential Issues.**

Among the most disturbing revelations contained in the Receiver's Reports is that Debtor assets have paid and continue to pay for personal expenses of H&P Wills.  The Third Report of Receiver succinctly describes the extent of improper payment of H&P Wills personal expenses:

> This receivership includes the owners of Bandar Enterprises.  Therefore, their assets need to be included into the equation of the business.  The Order Appointing Receiver specifically require[s] that Receiver shall maintain the assets of the business and those assets of Patricia and Heath Wills.  As mentioned in the first Report of Receiver, the Will maintain three homes.  Two of the homes are occupied by Patricia and Heath Wills.  They are a married couple who live separately in two different homes based on marital issues.  The third home is occupied by the parents of Patricia Wills.  The parents do not pay rent to either Patricia or Heath Wills.  Bandar pays the mortgage on all three homes.
>
> The Wills have five vehicles, of which only one, is paid in full. Heath Wills currently drives the 2008 Toyota Sequoia, which is paid off.  Patricia Wills drives the 2017 Ford F250 truck, which has an outstanding loan of just under $20,735.00.  The remaining vehicles, 2021 BMW Coupe has a loan of just under $43,520, the 2019 Dodge Ram truck has a loan just under $35,216, the VW Beetle which has a loan of $20,000, and finally a 2016 RoBalo 22' boat has a loan of just under $32,976.  Bandar pays the loans on all 4 vehicles and the boat.

(Works Decl. ¶ 13, **Exhibit 8** at 5). The Fifth Report of Receiver warns of several major problems facing H&P Wills that may adversely impact the Debtor:

> The most critical one is the Settlement Agreement entered into on December 22, 2021, between the (1) United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector general of the Department of Health and Human Services, and the Defense Health Agency, acting on behalf of the TRICARE Program, (2) the State of Nevada, acting through the Nevada Attorney General's Medicaid Fraud Control Unit and on behalf of the State of Nevada, Department of Health and Human Services, Healthcare Financing and policy Division – Nevada Medicaid, (3) Heath Wills PC, Dr. Heath Wills and Patricia Wills, and (4) relator Stacie Oliver, M.D. Bandar is not a party to the Settlement Agreement.
>
> The Settlement Agreement is for the sum of $1,092,000.00 of which $840,000.00 is restitution.  It is the Receiver's understanding that the Wills sold one of their real estate properties to make the initial down payment of $300,000 one year ago, and the next payment of the Wills must pay under the Settlement Agreement in the amount of $137,834.78 is due to the government by January 5, 2023.  If this is forced on Bandar, then the ability to pay it is unlikely.[8]

---

[8] Heath Wills subsequently testified that he paid the OIG payment and the Wells Fargo loan payment (on which Heath Wills PC is a guarantor) out of the Heath Wills PC account without needing to

McDONALD ⚫ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD ⦿ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

(Works Decl. ¶ 15, **Exhibit 10**.) H&P Wills continue to withhold documents regarding on-going

Debtor payments for H&P personal expenses:

> The Receiver is no longer in direct communication with Heath or Patricia Wills, since they are now represented by counsel.  The Receiver continues to request copies of all invoices or statements pertaining to the Will's assets that are being paid by Bandar's bank accounts.  Only a couple of documents have been produced for the Receiver.  The Receiver remains firm on his demand of paying only on physical invoices or statements.

(*Id.*)  Adding to the financial difficulties of H&P Wills and Heath Wills, PC is that it is undisputed

that Wells Fargo Bank has a $600,000 secured line of credit and a $1.2 million loan.  (*See* Works

Decl. at ¶ 22, **Exs. 16-19**).

**I.      H&P Wills Continue to Stonewall Discovery and Transfer Assets.**

In 2023, H&P Wills and the Wills Defendants continue to ignore Nevada Court Orders

requiring turnover of financial information for the Debtor and other H&P controlled entities.  In

response, the Nevada Court required H&P Wills to appear in court to testify as to the source of the

funds used to make various payments.  (Works Decl. at ¶ 20, **Exhibit 15**).

On March 8, 2023, Heath Wills appeared pursuant to the Nevada Court's order (Patricia Wills

did not).[9]  Yet, the testimony of Heath Wills was evasive as to accounting documents and raised

concerns about transfers to himself and to entities controlled by H&P Wills. (Works Decl. ¶ 21, Ex.

16 ("3/8/23 RT") 4:23-5:5.)  For example, Heath Wills testified that: He made an "error" violating

the Receiver Order and Injunction by moving Debtor equipment out of the Fort Apache lab and

"leasing" it to a company in California without the Receiver's approval. (*Id.* at 88:19-94:14).  He

further averred that he took draws from the Debtor in 2020 and 2021 but does not know how much

they were for (*See id.* at 87:20-88:18).

---

move any additional money into the account because it had a sufficient balance to cover both (*See* Works Decl. ¶ 19, **Exhibit 14** at 29:23-30:12; 37:20-25; 39:13-17).

[9] Since the March 8, 2023 hearing, the Court has set a further Order to Show Cause hearing for April 19, 2023, requiring Patricia Wills to appear and testify as to why she did not appear at the March 8, 2023, hearing and ordering that if she does not appear, he will issue a bench warrant for her arrest and/or further sanction her. (Works Decl. ¶ 20, **Exhibit 15**).

Additional information is anticipated when Heath Wills resumes his testimony at a hearing to be held before the Nevada Court on April 19, 2023 at which time Patricia Wills has also been ordered to appear and testify.  (*See* Works Decl. ¶ 20, **Exhibit 15**).

**J.      Debtor's Chapter 11 Case and Heath Wills, PC Issues.**

On March 28, 2023 (the "Petition Date"), the Debtor filed its chapter 11 petition pursuant to the alleged authorization of its member and manager, Heath Wills.  [*See* ECF No. 1.]  The Debtor's case was filed on an "emergency basis" to avoid "a potentially dispositive ruling" and "without any real pre-petition preparation" and Debtor's Schedules or Statement of Financial Affairs were not filed within 14 days of the Petition Date. (Debtor's Motion To Extend Time at [ECF No. 24] ¶ 6.) Debtor has requested a three week extension, to May 2, 2023. (*Id*.)  Thus, at the time of filing this Motion, Creditors have little information regarding the Debtor's asserted assets and operations other than what is provided in the Receiver's Reports and request authority to supplement this Motion when such information is provided by Debtor.

What little information is provided in this Case is troubling.  For example:

- Debtor's proposed general bankruptcy counsel, Larson & Zirzow, LLC ("L&Z") hold a $26,594.00 retainer paid by Heath Wills P.C. which Matthew C. Zirzow declares "currently has no business or operations of its own." (Declaration of Matthew C. Zirzow in Support of L&Z Retention Application, ECF No 18, ¶ 9.)  As Heath Wills P.C. has no business operations, the true source of funds paid to L&Z is unknown.

- L&Z was previously paid "$8,406.00 for work reviewing and analyzing the company's financial situation and preparing for the Chapter 11 Case, as well as related expenses, including the filing fee for the case."  (Zirzow Declaration ¶ 8).  The source of this payment is not disclosed but could not have come from the Debtor whose accounts are exclusively controlled by the Receiver.

- The Debtor currently operates "two (2) clinical reference laboratories" and has "about 27 employees."  (Debtor's Motion To Extend, ECF No. 24, ¶ 1.)  Yet, Wells Fargo, which holds a security interest in substantially all Debtor's assets, filed a "Notice of Non-Consent To Debtor's Use of Cash Collateral" as ECF No. 8.  Without Well Fargo's consent or an order approving use of cash collateral, employees and operational expenses cannot be paid.

- The Debtor's Cash Collateral Motion asserts in Paragraph 6 that it is not a "health care business" pursuant to 11 U.S.C. § 101(27A) because "(a) it does not offer to the general public facilities or services."  [ECF No. 30.]  Debtor neglects to mention that it offered COVID-19 drive-through testing directly to

the public (and received media coverage for such testing) which would make it a "health care business" as defined under the Code.

## IV.    LEGAL ARGUMENT

### A.    This Court Should Enter An Order Of Abstention and Dismiss The Debtor's Chapter 11 Bankruptcy Case.

Creditors request this Court dismiss the Debtor's Bankruptcy Case pursuant to 11 U.S.C § 305(a)(1) to avoid delay, duplication and confusion and to allow the Receiver to recover assets fraudulently transferred and used to pay personal expenses of H&P Wills. A bankruptcy court may dismiss or suspend a case at any time, "if the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Ultimately, "dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that *both* 'creditors and the debtor' would be 'better served' by a dismissal." *In re Eastman,* 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) (emphasis added and citations omitted). *See* 2 *Collier on Bankruptcy* ¶¶ 305.01 and 305.02 (16th ed. rev. 2017). The bankruptcy court "must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension." *In re Marciano,* 459 B.R. 27, 46 (B.A.P. 9th Cir. 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013) (quoting *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 247 (9th Cir. BAP 2007)).

A number of factors are to be considered when evaluating whether to abstain and dismiss a bankruptcy case under Code § 305(a):

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Marciano,* 459 B.R. at 46-47*; see also In re Orchards Village Investments, LLC*, 405 B.R. 341, 351 (Bankr. D.Or. 2009) (citing *In re Fax Station, Inc.,* 118 B.R. 176, 177 (Bankr. D.R.I. 1990)).

14

Generally, none of the factors are given primary consideration as relief is "based on the totality of the circumstances." *In re Marciano,* 459 B.R. at 48-49 (citing *In re Macke Int'l Trade, Inc.*, 370 B.R. at 247). However, many courts have held "the economy and efficiency of administration, is the paramount concern when determining if abstention under § 305(a) is appropriate." *High Plains Mesa Holdings, LP*, No. 21-11970-A-11, 2021 WL 4995461, at *11 (Bankr. E.D. Cal. Oct. 20, 2021), adopted sub nom. *In re High Plains Mesa Holdings LP*, No. 21-11970, 2021 WL 4995034 (Bankr. E.D. Cal. Oct. 25, 2021).

**B.    Abstention Is In The Best Interest of Creditors and the Debtor**

Here, abstention is justified based on the 7 factors discussed above and, in particular, the 11 months of management, payment of creditors, and investigation undertaken by the Receiver and the Nevada Court's finding of liability for fraudulent transfers against H&P Wills and the Wills Defendants. Abstention is in the best interests of creditors and the Debtor who would be better served by not undoing the progress made in the Nevada Action and by the Receiver.

**1.    Economy and Efficiency of Administration Favor Abstention**

"Typical circumstances for dismissing under § 305(a)(1) include the pendency of proceedings such as …state court receiverships…" *In re Macke Int'l Trade, Inc*., 370 B.R. at 247. When a receiver is appointed by a state court before the bankruptcy filing, bankruptcy courts consider the length of the time the receiver has acted under a receivership order, what the receiver has done, and the impact of these considerations on the other relevant factors. *See In re Packard Square LLC*, 575 B.R. 768, 781 (Bankr.E.D.Mich. 2017); *see also In re Starlite Houseboats, Inc.*, 426 B.R. 375, 389 (Bankr. D. Kan. 2010) (dismissing bankruptcy case under § 305(a)(1) where a "state court receivership had been pending for approximately eight months when [the bankruptcy] case was filed," the court finding that "the interests of creditors and the [d]ebtor would be served by dismissal of the case" because "continuation of the state court receivership proceeding, which [was] well underway, [was] preferable to starting anew in [the bankruptcy] court").

> The pendency of state law liquidation proceedings ... is relevant to an abstention decision under section 305(a)(1). For instance ... when the debtor has been in receivership for so long that the bankruptcy case would be duplicative and wasteful, courts have deferred to state courts and abstained under section 305(a)(1).

2 *Collier on Bankruptcy* ¶ 305.02[2][c], at 305–8 to 305–09 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017) (footnotes omitted).

Here, on May 5, 2022, the Nevada Court appointed the Receiver, a professional with extensive experience and exceptional credentials. (*See* Works Decl. ¶ 10, **Exhibit 5**.)  The Receiver has been involved in the Las Vegas community with service to law enforcement and to the federal and state court system. (*See id.*)  Currently, the Receiver serves as a fraud examiner for the US Bankruptcy Court, and as a Court Appointed Receiver serving the Nevada District Courts. (*See id.)*

For 11 months the Receiver has been primarily responsible for operating and managing the Debtor's business and, based on his exclusive responsibility for Debtor's finances has evaluated and paid valid creditor invoices. (*See* Works Decl. ¶¶ 10-15, **Exhibits 6-10** (citing to the Five Reports of Receiver).)  This contrasts sharply to the Debtor's condition when the Receiver assumed control. Upon taking charge, the Receiver discovered that "most, if not all, [of H&P Wills'] personal bills, were being paid by the company, and not directly by Heath or Patricia Wills" and that "tax returns, business reports, and other necessary document, that the receiver needed, were almost non-existent." (*See* Works Decl. ¶ 11, **Exhibit 6** at 3-4.)

In spite of extensive stonewalling by H&P Wills, the Receiver stabilized the Debtor's operations, controlled its finances and created industry-standard business practices, accounting records, and payment schedules. (*See* Works Decl. ¶ 13, **Exhibit 8** at 2.)  The Receiver's management and financial guidance enabled the Debtor to conduct business, meet payroll, and to pay current and legacy creditors.  [*See* ECF No. 23 at Exhibit 1.]

Moreover, the rosy picture painted by Debtor's accrual-based Internal Accounting Profit/Loss Statement attached to its Voluntary Petition is misleading and the Debtor's 2022 income/expense report, actually shows that Debtor's expenses for the 2022 were $80,000 greater than its income. *Compare id.*, *with* Works Decl. ¶ 15, **Exhibit 10**.  A great deal more work needs to be done to establish a profitable operation.[10]

---

[10] Appended to its Cash Collateral Motion, Debtor includes a pro-forma budget of estimated income and expenses for the period April through July 2023, however, the basis for the Debtor's estimate is not provided either in the Cash Collateral Motion or in the Dr. Heath Wills' Declaration.  [*See*, *e.g.*,

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

[T]he main focus for the Receiver has been turning Bandar Enterprises into a fully functional business operation with detailed financial records, making sure authority rest with each division director as well as with business office supervision. . . . having the business manager control the receipt of all vendor invoices an providing information for monthly payments prevents double payments and a clear view of what is owed at any given time.

Most of the changes instituted by the Receiver are operational in nature, not income generating.  Procedures established to better deal with vendors and creditors, such as improving communications with vendors and creditors, will certainly prevent situations like that which did occur in the past.  So many of the lawsuits, that Bandar is now facing, could have been prevented by establishing a detailed payables department with qualified employees who are willing to advise upper management of those payments that are now due and payable.

(Works Decl. ¶ 15, **Exhibit 10** at 3.)

The Receiver's success in addressing and resolving many outstanding creditor claims is summarized succinctly, which, among other things notes:

- Wells Fargo Lawsuit – described as the "Elephant in the room" because Wells Fargo "has the power to terminate Bandar's operations."  Fortunately, the Receiver's counsel was able to come to a settlement regarding Bandar's ability to make monthly payments for the next several months.  The Debtor's current chapter 11 filing has turned this from settlement to adversarial.

- Ovations OI Lawsuit – plaintiff's attorney agreed to settle for $7,500 and a fifth and final payment was sent in December 2022.

- UPS Lawsuit – Receiver's counsel settled this claim for $25,464.88 for a single payment of $13,311.00 in August 2022.

- Henry Schein Lawsuit – this claim for $47,829.12 is from an essential vendor who agreed to a $10,000/month payment plan with full payment in January 2023.

- Fisher Healthcare Lawsuit – this claim for $181,370.32 is from an essential vendor and a settlement of payments for $15,000 per month is now endangered by the Debtor's chapter 11 case.

- FedEx Lawsuit – this creditor collection lawsuit has been turned over to Receiver's counsel for negotiations with the vendor.

- LumiraDX Lawsuit – the Receiver is making small payments to prevent further court action.

---

ECF No. 30; 34.]  The Debtor's rosy pro-forma is likewise inconsistent with the Receiver's list of 2022 Monthly Income and Expenses.  (*See* Works Decl. ¶ 15, **Exhibit 10** at Exhibit A (detailing *a loss of $256,404.87* for the months of September and October 2023).)  Without actual results for January through March 2023, the pro forma has no basis and cannot support a request for Emergency Us of Cash Collateral.

McDONALD ❦ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

iSource Cloud Services, LLC – the Receiver obtained a settlement of this dispute but a global settlement awaits approval from H&P Wills, which has not been obtained.  (Fifth Report of Receiver at 7.)

(*Id*. at 4-5.)

The Receiver Reports show that good progress is being made to stabilize the Debtor's business, make current payments to creditors and salaries to employees, settle legacy creditor actions, and to create "a fully functional business operation with detailed financial records." (Works Decl. ¶ 15, **Exhibit 10.**)  The "Elephant in the room" is the Wells Fargo foreclosure action which, if not resolved, will "terminate Bandar's operations."  (*Id.* at 4.)

Recently, Wells Fargo moved for summary judgment on its foreclosure action against the non-Debtor Wills Defendants and objects to use of cash collateral by Debtor.  (*Id.*)  If Debtor remains in bankruptcy, termination of its operations followed by liquidation is almost certain, leaving few assets from which to make distributions to unsecured creditors.

> **2.  Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court**

Yes. The Nevada Court Action was filed in April 2020, the Nevada Court appointed the Receiver in May 2022 and the Nevada Court continues to preside over claims against H&P Wills and the Wills Defendants as damages are determined on previously found liability.  (*See* Works Decl. ¶¶ 5, 16-17, **Exhibits 2, 11-12.**)  The gravamen of the Nevada Court Action involves creditor claims against the Wills Defendants and operation of the Debtor by an experienced Receiver who is able to create financial, provide managerial stability and investigate the misuse of Debtor's funds by H&P Wills arising under Nevada law. *See In re E. 30A Rest. Assoc., LLC,* No. 17-30450-JCO, 2017 WL 4857418, at *3 (Bankr. N.D. Fla. Oct. 25, 2017) (examining factors 1-3 and abstaining, in part, because the pending state lawsuit involved the interpretation and application of state law); *In re eFusion Servs., LLC,* No. 13-30740 MER, 2014 WL 5293415, at *6 (Bankr. D. Colo. Oct. 16, 2014) (noting that in the absence of resolution of the pending state court action, additional unnecessary expense for the parties and administrative burden on the court would be created).

Here, the Nevada Court already determined H&P Wills "took the Plaintiffs' capital investments in excess of $900,000," "blinded the Plaintiffs to the business operations and

financials," "usurped their control and authority within the company," and "commenced using those assets to create significant profits in a substitute entity created and owned solely by Defendants Heath and Patricia Wills." (Works Decl. ¶ 16, **Exhibit 11** at. 2.) The Nevada Court further determined that Debtor and H&P Wills "willfully refused to participate in the adversarial process, and such conduct prejudiced Plaintiffs." (Works Decl. ¶ 17, **Exhibit 12** at 9-10.) Thus, after litigating this case for approximately 3 years, Creditors obtained dispositive sanctions against the Debtor and H&P Wills and all that remains is a prove up hearing to determine the amount of damages, pursuant to Nevada law, for Creditors' default judgment. (*Id.*)

As discussed above, the Receiver possesses extensive experience as a Bankruptcy Fraud Investigator, Examiner & Receiver, to oversee Debtor. (*See* Works Decl. ¶¶ 9-10, **Exhibits 4-5**.) The Receiver has undertaken significant efforts to investigate the Debtor, determine Debtor and H&P Wills' assets and liabilities, has continued to run Debtor's laboratories, install proper accounting and billing practices, and settle with legacy creditors. (*See* Works Decl. ¶¶ 11-15 **Exhibits 6-10**.) Therefore, not only is the pending Nevada Court Action nearing its completion, the Receiver has already performed much of the work the Bankruptcy Court would require. This benefits not only the Creditors bringing this Motion but *all* creditors as it allows for efficient investigation into the Debtor's assets and provides a greater chance that there will be sufficient funds to cover debts if the Receiver is allowed to remain in place. This factor clearly weighs in favor of abstention.

**3.    Whether federal proceedings are necessary to reach a just and equitable solution**

No. If the Court does not abstain, the Receiver's management, operation and investigation of Debtor will cease and, unless it reaches an agreement with Wells Fargo for use of cash collateral and equipment, the Debtor will be forced to liquidate. This will harm the Debtor Estate as well as the creditors because it will halt the extensive progress made by Receiver thus far. While the other creditors are not parties to the Nevada Court Action, those creditors benefit from the Receiver's on-going efforts to stabilize and continuing to run the laboratories.

Further, resolving the Nevada Court Action, allowing the Receiver to determine the amount owed to Creditors by Debtor and, enabling the Receiver to recover assets fraudulently transferred to Debtor (as has been determined by the Nevada Court) are necessary before this Court can effectively

administer the Debtor's Estate.  *See, e.g., In re E. 30A Rest. Assoc.,* 2017 WL 4857418, at *3 (abstaining "because the claims in the Lawsuit must be resolved before this Chapter 11 case can take off, this Court would be unable to economically and efficiently administer Debtor's estate").

    **4.**    **Whether there is an alternative means of achieving the equitable distribution of assets.**

Yes. This factor clearly weighs in favor of abstention.  The Receiver is successfully operating the Debtor, paying current invoices, resolving and settling legacy claims, and is actively been investigating the financial improprieties created by H&P Wills and the Debtor.  This last task – investigating and recovering fraudulent and improper transfers to H&P Wills and Heath Wills, PC – represents the Debtor's greatest potential asset because, "the [Debtor's] business accounts were basically used by Heath & Patricia Wills as their personal bank accounts…" (Works Decl. ¶ 11, **Exhibit 6** at 8.)  If the Debtor remains in bankruptcy under the control of Heath Wills this asset will not be pursued.

The Receiver has made great strides in managing the Debtor's assets, creating systems to identify current liabilities, and to pay both current vendors and legacy debt some of which is owed to critical vendors.  Abstention allows the Receiver to complete discovery against H&P Wills who have stone-walled the Receiver's investigations and repeatedly ignored court orders to cooperate. The Nevada Court has authority, and has exercised that authority, to compel H&P Wills to provide information needed by the Receiver and appears willing to continue to do so. Again, abstention benefits all creditors as the Nevada Court is already overseeing the Debtor's Estate and can insure equitable and (with settlements) potentially full payment of claims without intervention by this Court.

    **5.**    **Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case**

The Receiver successfully negotiated with legacy creditors (those arising before the Receiver's appointment) and the Receiver instituted procedures to improve communication with vendors and to control expenditures and payments.  (*See* Works Decl. ¶ 15, **Exhibit 10**.)  Abstaining from exercising jurisdiction allows the Nevada Court Action to proceed to final judgment and allows

20

1   the Receiver to continue his work without impeding or halting the Receiver's progress in bringing

2   the Debtor to profitability. As the Receiver has authority over Debtor's estate and has made efforts

3   to resolve legacy creditors' claims thus far, the Nevada Court is already in the position to oversee

4   out-of-court arrangements with creditors to the benefit of those creditors and Debtor.

5         **6.     Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process**

6

7         Certainly, yes. The Nevada Court Action is three-years old, the Nevada Court has entered

8   many dispositive orders resolving claims against H&P Wills and the Wills Defendants (including

9   the Debtor), and the Receiver has actively managed the Debtor for nearly a year.  Given the status

10   of the Nevada Court Action and the extensive progress made by Receiver thus far, bankruptcy

11   proceedings are unnecessary and expensive re-litigation of issues resolved or nearly resolved by the

12   Nevada Court.  All that remains is a prove-up of damages for both the Nevada Court Action and the

13   Wells Fargo foreclosure.  Starting over in this Court would be expensive, time consuming and

14   repetitive of Nevada Court litigation.

15         **7.     The purpose for which bankruptcy jurisdiction has been sought.**

16         Debtor asserts that it filed this chapter 11 case on an emergency basis and with insufficient

17   preparation to "forestall a potentially dispositive ruling in certain collection litigation."  [ECF No.

18   24 at 3.]  The imminent "dispositive ruling" cannot refer to the Nevada Court Action because the

19   Nevada Court's dispositive ruling against H&P Wills and the Wills Defendants was entered on

20   November 30, 2022. (*See* Works Decl. ¶ 17, **Exhibit 12**.)  Nor did the filing of this Case forestall

21   the Wells Fargo Litigation because there is no material dispute that Wells Fargo holds a fully

22   perfected secured interest in Debtor's equipment and other assets.   And given the dispute over the

23   amount of Wells Fargo's secured claim, the Nevada Court continued to July the hearing on the Wells

24   Fargo motion for summary judgment.  There is no basis to assert that Wells Fargo is able to obtain

25   a judgment and foreclose on its collateral prior to the July hearing.  No emergency exists based on

26   an imminent dispositive ruling.  [*Cf*. ECF No. 24.]

27         In fact, it was known to the Receiver in December 2022 – and thus to the Debtor – that Wells

28   Fargo is the "Elephant in the room" because Wells Fargo "has the power to terminate Bandar's

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

operations." (Works Decl. ¶ 15, **Exhibit 10** at 4.)  And unless the Debtor can reach agreement with Wells Fargo regarding use of cash collateral and defeat Wells Fargo's inevitable motion for relief from stay, this Chapter 11 case will collapse and Debtor's emergency filing will be in vain.  That much is admitted in Paragraph 73 of the Debtor's Cash Collateral Motion.

A far more plausible purpose for the Debtor's filing – and one more consistent with the facts – is that H&P Wills seeks to delay, obstruct and otherwise forestall actions by the Receiver against himself, and his wholly owned, non-operating entity, Heath Wills, PC.  The Receiver has documented that the Debtor paid mortgages and loans for three homes, five cars and a boat personally owned by H&P Wills and Debtor's tax return submitted in connection with the petition shows that hundreds of thousands of dollars were improperly distributed to Heath Wills and Heath Wills, PC while creditor claims were unpaid.  (*See* Works Decl. ¶¶ 11-15,  **Exhibits 6-10**.)

The truth is that the Receiver Caught Heath Wills, Patricia Wills, Heath Wills PC, and their other entities with their hands in the Debtor's cookie jar and they are desperate to extinguish the spotlight on their misdeeds.  The Receiver amply documented the plundering of Debtor's assets by H&P Wills and their entities.  And as recently as March 2023, Heath Wills testified before the Nevada Court that he violated the Receiver Order and Injunction by moving Debtor equipment out of the Fort Apache lab and "leasing" it to a company in California without the Receiver's approval.  (Works Decl. ¶ 19, **Exhibit 14** at 88:19-94:14.)  The Creditors believe that the entity in California is also controlled by Heath Wills.  The plundering continues.

Thus, the true purpose for filing the Debtor's case is to prevent the Receiver from pursuing fraudulent transfer and misappropriation of Debtor asset claims against Heath Wills, Patricia Wills and Heath Wills, PC and their entities.  With Heath Wills in control of this Case, the Debtor's most valuable asset – its actions against its managers and members – will be forgotten and no other party will be able to bring such claims.  Such improper purpose justifies dismissal based on abstention under Section 305(a).

22

## V. CONCLUSION

Based on the foregoing, Creditors respectfully request that this Motion be granted and that this Court enter an order abstaining and dismissing the Chapter 11 Case filed by the above captioned Debtor.

A proposed Order is attached hereto as **Exhibit 1**.

DATED this 18th day of April, 2023.

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
     Ryan J. Works, Esq. (NSBN 9224)
     John A. Fortin, Esq. (NSBN 15221)
     2300 West Sahara Avenue, Suite 1200
     Las Vegas, Nevada 89102

     HOLLAND & KNIGHT
     Anjuli B. Woods, Esq. (NSBN 10989)
     1801 California Street, Suite 5000
     Denver, CO  80202

     Andrew Cummings, Esq. (NSBN 14505)
     3 Park Plaza, Suite 1400
     Irvine, CA 92614

     *Attorneys for Single Helix Investment*
     *Technology, LLC., Collins Capital LLC,*
     *Susan Kaplan, Stephen Geller, and*
     *Martin Fabrikant*

# EXHIBIT 1

# EXHIBIT 1

1

2

3

4

5

6 Ryan J. Works, Esq. (NSBN 9224)
John A. Fortin, Esq. (NSBN 15221)
7 McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
8 Las Vegas, Nevada 89102
Telephone: (702) 873-4100
9 rworks@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

10 HOLLAND & KNIGHT LLP
Anjuli B. Woods, Esq. (NSBN 10989)
11 1800 California Street, Suite 5000
Denver, CO 80202
12 Telephone: (303) 974-6660
anjuli.woods@hklaw.com

13 Andrew Cummings, Esq. (NSBN 14505)
3 Park Plaza, Suite 1400
14 Irvine, CA 92614
Telephone: (949) 679-4371
15 andrew.cummings@hklaw.com

16 *Attorneys for Single Helix Investment
Technology, LLC., Collins Capital LLC,*
17 *Susan Kaplan, Stephen Geller, and
Martin Fabrikant*

18 **UNITED STATES BANKRUPTCY COURT**

19 **DISTRICT OF NEVADA**

20 | In re | Case No.: 23-11160-abl |
21 | | Chapter 11 |
| BANDAR ENTERPRISES, LLC, | |
22 | | **ORDER GRANTING MOTION FOR** |
| Debtor. | **ABSTENTION AND DISMISSAL OF** |
23 | | **DEBTOR'S CHAPTER 11 BANKRUPTCY** |
| | **CASE PURSUANT TO 11 U.S.C. § 305(a)(1)** |
24 | | **AND FEDERAL RULE OF BANKRUPTCY** |
| | **PROCEDURE 1017(d)** |
25 | | |
26 | | **Hearing Date:** |
| | **Hearing Time:** |

27 This matter came before the Court on a hearing of Single Helix Investment Technology,

28 LLC., Collins Capital LLC, Susan Kaplan, Stephen Geller, and Martin Fabrikant ("Creditors")

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

*Motion for Abstention and Dismissal of Debtor's Chapter 11 Bankruptcy Case Pursuant to 11 U.S.C. § 305(a)(1) and Federal Rule of Bankruptcy Procedure 1017(d) (*the "Motion") [ECF No. ____].  All appearances were noted on the record.

To the extent that the Court made findings of fact and conclusions of law in the course of its oral ruling, those findings of fact and conclusions of law are incorporated into this Order by this reference pursuant to Fed. R. Civ. P. 52, made applicable in this contested matter by Fed. R. Bankr. P. 9014.  The Court having considered the same and for good cause appearing, and for the reasons stated on the record at the hearing of this matter,

**IT IS HEREBY ORDERED** that the Motion is GRANTED in its entirety and this Court will abstain from taking jurisdiction of this Chapter 11 Bankruptcy Case;

**IT IS FURTHER ORDERED** that the above captioned Chapter 11 Bankruptcy Case is dismissed.

# # #

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

In accordance with LR 9021, counsel submitting this **ORDER GRANTING MOTION FOR ABSTENTION AND DISMISSAL OF DEBTOR'S CHAPTER 11  BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 305(a)(1)** certifies that the order accurately reflects the court's ruling and that (check one):

☐    The Court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

Submitted by:

McDONALD CARANO LLP

By: */s/*_____
Ryan J. Works, Esq. (NSBN 9224)
John A. Fortin, Esq. (NSBN 15221)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

HOLLAND & KNIGHT LLP
Anjuli B. Woods, Esq. (NSBN 10989)
1800 California Street, Suite 5000
Denver, CO 80202
anjuli.woods@hklaw.com

Andrew Cummings, Esq. (NSBN 14505)
3 Park Plaza, Suite 1400
Irvine, CA 92614
andrew.cummings@hklaw.com

*Attorneys for Single Helix Investment Technology, LLC., Collins Capital LLC, Susan Kaplan, Stephen Geller, and Martin Fabrikant*

McDONALD ⬥ CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966